J-S36002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.A.Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF S.R.Y., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 572 EDA 2017 |

Appeal from the Decree Entered January 26, 2017
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s):  2016-A0188

| | | |
|---|---|---|
| IN THE INTEREST OF: S.R.Y., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF S.R.Y., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 574 EDA 2017 |

Appeal from the Decree Entered January 26, 2017
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s):  2016-A0189

BEFORE:   PANELLA, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J.                    **FILED JUNE 08, 2017**

S.R.Y. ("Father") appeals the decrees entered on January 26, 2017, that granted the petitions filed by Kelly Weidner, of Haven Adoptions, seeking to involuntarily terminate Father's parental rights to his twin children, S.R.Y., Jr., a male, and H.A.Y., a female, (collectively, the "Children") with G.E.E.B. ("Mother"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (6), and (b), so that R.J.S. ("Adoptive Father") and

D.S. ("Adoptive Mother") (collectively, "Adoptive Parents") may adopt the Children. We affirm.[1]

Mother executed consents to adoption on October 21, 2016. Towards the end of that month, Adoptive Parents, who live in Utah, had the Children residing in their home for at least a week until Father objected to the adoption set up by Mother. The Children were then returned to Pennsylvania, where Haven Adoptions placed them in temporary foster care while the adoption proceedings took place. On November 17, 2016, Kelly Weidner, of Haven Adoptions, filed petitions seeking to involuntarily terminate the parental rights of Father to the Children and petitions to confirm consent to adoptions executed by Mother.

---

[1] The trial court did not file an opinion in this matter. Rather, in a document captioned "Pa.R.A.P 1925(a) Opinion," the court adopted its reasoning stated on the record at the conclusion of the hearing on the termination petition between pages 124 and 142 as its opinion. **See** Pa.R.A.P. 1925(a) Opinion. **See also** N.T., Termination Hearing, 1/25/17, at 124-142. The transcript attached to the Pa.R.A.P. opinion, such that it is, is missing page 142, but that page is included in the record as part of the transcript.

The court's discussion is devoid of any citations to the record and supporting case law. The failure to draft a proper Rule 1925(a) opinion, containing case law and citation to the record, is simply unacceptable. We, however, decline to remand to the trial court for the preparation of an opinion as that would delay the resolution of this Children's Fast Track appeal. We strongly caution the trial court against proceeding by adopting on-record discussions as its Rule 1925(a) opinion in the future.

The trial court held an evidentiary hearing on December 1, 2016. At the hearing, the trial court granted the petitions to confirm Mother's consent to adoption, involuntarily terminating her parental rights.[2] The trial court continued the hearing to January 2017, so that Father could obtain counsel prior to the court hearing the petitions to involuntarily terminate his parental rights.

On January 25, 2017, Kelly Weidner, on behalf of Haven Adoptions, filed amended termination petitions for the Children. The trial court held an evidentiary hearing with regard to the petitions to terminate Father's parental rights. At the hearing, Adoptive Parents first presented the testimony of Mother. *See* N.T., Termination Hearing, 1/25/17, at 4. Mother testified that Father had been at the hospital for the birth of the Children, but had not provided any money or gifts for the Children, and had refused her requests for money for the Children. *See id*., at 6-7, 13. She noted Father had once provided disposable diapers and a box of baby wipes a couple of weeks after the Children were born, and that he had only seen them five or fewer times. *See id*., at 6, 13, 17. Mother stated that she had been unable to contact Father for several months, because he had her phone number blocked on his phone. *See id*., at 7.

_____

[2] Mother has not filed an appeal from the orders confirming her consent to the adoption and involuntarily terminating her parental rights to the Children.

- 3 -

After Father opposed the adoption, the Children were returned to Mother's home from Adoptive Parents' home in November 2016 for a week or two. *See id*., at 18. During the period when the Children were returned to Mother, she had driven them to Father, at his request—and he had seen them through the car window on a street in Norristown. *See id*., at 14-15, 17, 19-20.

At the time of the hearing, the Children were placed in a foster home through Haven Adoptions. *See id*., at 8. Mother testified that Father is a danger to the Children, and has a criminal past. *See id*., at 9. Mother testified that she has a five-year-old daughter, S.B, with Father who resides with her. *See id*., at 11-12.

Adoptive Father then testified on his own behalf. *See id*., at 21. Adoptive Father testified that he and Adoptive Mother have three other adopted children. *See id*., at 12. Adoptive Parents had met the Children and immediately fallen in love with them and wished to adopt them. *See id*., at 21-23.

Haven Adoptions, on behalf of Adoptive Parents, then presented the testimony of Kayla Mazzotta, a caseworker employed with Haven Adoptions. *See id*., at 24-25. She believed that Adoptive Parents would be good parents and that the Children would bond with them. *See id.,* at 25-26. She clarified that Haven Adoptions became involved as a provider of temporary

foster care for the Children and was not acting as an adoption agency. *See id*., at 30.

Father then presented the testimony of Mother's brother, A.B. *See id*., at 33. He saw Father at the hospital on the day the Children were born. *See id*., at 34. A.B. also testified that Father had come to the home where he resides with his mother, the Children's grandmother, on several weekends in June and July 2016, and a bag with diapers and onesies was on the floor at most times. *See id*., at 37-38. A.B. was unsure whether Father provided Mother with any money for the Children. *See id*., at 38. A.B. testified that he had seen Father at the birthday party for A.B.'s son in late September 2016. *See id*., at 39-40. A.B. had seen Mother and the Children at the party, as well, but he was unsure whether Father brought anything for the Children. *See id*., at 40. Between the end of July and the beginning of November, Father did not contact A.B. to assist him in getting to see the Children. *See id*., at 42.

Next, Father presented the testimony of A.C., the mother of Mother's niece. *See id*., at 43. A.C. saw Father at the hospital when the Children were born. *See id*., at 44. A.C. saw Father at the birthday party for A.B.'s son on the last weekend of September 2016. *See id*., at 44-45. A.C. also stated that she had seen Father leaving the residence of Mother on four occasions on weekends prior to the party, after the birth of the Children. *See id*., at 45. She observed a bag with diapers, and A.B. told her that there

were wipes and onesies in the bag, but she did not know whether Father had brought them for the Children. *See id*. A.C. testified that Father held the Children at the party. *See id*., at 46-47.

Father then testified on his own behalf. *See id*., at 48. Father testified that he moved to Norristown in September or October 2016, and that he had previously resided in New Jersey after his release from incarceration in 2014. *See id*., at 48-50. Father resides with his sixteen-month-old son and his girlfriend. *See id*., at 50. Father also has two older female children, ages thirteen and nine, who reside with their mother. *See id*., at 51-52. Father stated that he has custody of the older two children on weekends, by agreement of their mother, and not by order of court, and that he pays the mother of those children $550 a month in child support through a court order. *See id*., at 51. Father stated that he would see his five-year-old daughter with mother, S.B., every other weekend until September or October 2016, when Mother found out about his girlfriend, and then Mother would not let him see S.B. *See id*., at 52. Father testified that he saw S.B. one time around Christmas 2016, when he went to Mother's home to discuss the adoption of the Children. *See id*., at 52-53. Father stated that Mother told him that the Children were at the home of a relative. *See id*. Father stated that he does not provide any set amount of support to Mother for S.B., but provides for S.B. on an "as needed" basis. *Id*., at 53.

Father testified that he was present for the birth of the Children. *See id*., at 53-54. Father stated that he saw the twins more than five times, that he had seen them on every weekend in June, and that he had mostly seen them on weekends, when Mother would come to his house in Norristown, which was being renovated. *See id*., at 55-59. Father stated that he had begun working on Saturdays in November 2016. *See id*., at 58. Prior to his current employment, Father was fired from his previous job, and was between jobs. *See id*., at 57-58. Father stated that the Children had seen his older children when they were at his home on weekends and at the homes of his sisters. *See id*., at 58-59. Father had the trial court admit an exhibit purporting when he had visited the Children since their birth. *See id*., at 59-60; Exhibit F-1. He stated that the visits during the week might not be 100% accurate, but the visits on the weekends were accurate, and that the document was 98% accurate. *See id*. Father had the trial court admit as an exhibit a group of pictures he had taken of the Children. *See id*., at 62-63; Exhibit F-2.

Father testified that he was unaware that Mother was placing the Children for adoption until he was asked to give his consent. *See id*., at 60-61. He also testified that he had provided the Children with supplies including two boxes of diapers a month, as well as onesies, and that he had given Mother money for the Children, in the amount of $40 or $50, on several occasions. *See id*., at 64. Father stated that Mother would bring the

Children to his Norristown home and stay for the weekend on every weekend that he did not have his older two children after their birth until Mother placed them for adoption. *See id*., at 64-65. Father testified that he and Mother took the Children outlet shopping in the summer 2016, and he purchased some clothing for the Children that Mother subsequently destroyed as not good enough for the Children. *See id*., at 66-67. Father testified that he filed a petition for full custody of the Children on the day prior to the hearing, January 24, 2017. *See id*., at 67. Father testified that he and Mother's family believe that Mother is placing the Children for adoption to get back at him. *See id*., at 68. Father stated that he deserves a chance to raise them and they deserve a chance to live with him, and not with some strangers in Utah. *See id*., at 68.

On cross-examination by counsel for the Children, Father testified that he paid Mother $150 to $200 a month for support of the Children, in addition to providing two boxes of diapers and onesies. *See id*., at 76-77. Father conceded that the Children cannot survive on $175 a month. *See id*., at 77. Father stated that he had gone with S.R.Y., Jr., to Children's Hospital of Philadelphia for an acid reflux issue in late September 2016. *See id*., at 79.

When questioned on cross-examination by counsel for Haven Adoptions about Exhibit F-1, reflecting that he visited the Children on October 22, 23, and 30, Father stated that he probably got the dates wrong. *See id*., at 70. Father stated that he did not know that Mother was placing

the Children for adoption when he went to her home after Christmas in December 2016, and the Children were not present. *See id*., at 79-80.

Counsel for Haven Adoptions then questioned Adoptive Father on re-direct examination. Adoptive Father testified that the Children had been with him and Adoptive Mother on October 21, 22, 23, 29, and 30 of 2016, contrary to the representation in Father's Exhibit F-1 and testimony that they were with Father on those dates. *See id*., at 93. Mother testified on re-direct examination that the dates represented on Father's Exhibit F-1 were incorrect, and that Father had not seen the Children as many times as Father indicated, but only five times in total. *See id*., at 95-96. Mother stated that Father went with her and bought one box of diapers and one box of wipes, at her insistence. *See id*., at 96. She testified that Father never purchased any clothing for the Children, nor did he provide any money. *See id*.

On cross-examination by counsel for the Children, Mother testified that she could not afford to raise the Children, and that her financial situation was a factor in her decision to place the Children for adoption. *See id*., at 97-98. Mother testified that she had discussed her financial situation with Father and had requested monetary assistance from him, both before and after the birth of the Children, and that Father had told her that he was not working. *See id*. She was unaware that Father was working until she saw him in his work vest at the termination hearing. *See id*., at 98. Mother is

aware that Father provides support for his other children. *See id*. In their conversation in December 2016 around Christmas, Father did not offer to provide support for the Children. *See id*. Mother stated that father's Exhibit F-2 was incorrect because the Children were with Adoptive Parents during the last weekend of October 2016. *See id*., at 99-100.

Mother stated that Father never told her that he and his girlfriend were willing to raise the Children, as he has never admitted to her that he even has a girlfriend. *See id*., at 100-101. Mother explained that her five-year-old child with Father, S.B., is deaf and has implants to help her hearing, and Father has refused to provide any support for the child. *See id*., at 101. Mother's friend, R., and her husband have helped Mother in raising and financially supporting S.B. *See id*., at 101-102. Father comes to birthday parties for S.B. without bringing any gift for the child, while Mother is working two jobs to provide for the child financially. *See id*., at 102. Mother is afraid that Father poses a danger to the Children and herself because his criminal past involved gun violence and a shooting that resulted in the death of an individual. *See id*., at 103-107.

Based on the testimony and the documentary evidence admitted at the hearing, the trial court entered decrees granting the termination petitions. Father timely filed notices of appeal and concise statements pursuant to Pa.R.A.P. 1925(a)(2)(i). This Court, acting *sua sponte*, consolidated the appeals on March 2, 2017.

On appeal, Father raises two issues:

1. The [t]rial [c]ourt erred in finding clear and convincing evidence existed to terminate Birth Father's parental rights under 23 Pa.C.S. Section 2511(a)(1).

2. The [t]rial [c]ourt erred in finding clear and convincing evidence existed to terminate Birth Father's parental rights under 23 Pa.C.S. Section 2511(a)(6).

Father's Brief, at 4.[3]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

_____

[3] In his brief, Father contends that the trial court abused its discretion or erred as a matter of law in concluding that the evidence was sufficient to support the involuntary termination of his parental rights under § 2511(a)(1) and (6). He does not raise the termination of his parental rights under § 2511(b) in either his concise statement or the Statement of Questions Involved portion of his brief. Thus, he has waived any challenge to the termination under section 2511(b). *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal). *See also In re M.Z.T.M.W.*, ___ A.3d ___, ___, n.3, 2017 WL 2153892, *3, n.3 (Pa. Super., filed May 17, 2017).

[T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained that

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id*. (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any *one* subsection of § 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In his brief, Father contends that the trial court abused its discretion or erred as a matter of law in concluding that the evidence was sufficient to support the involuntary termination of his parental rights under § 2511(a)(1) and (6). We need only address subsection (a)(1).

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

With respect to subsection (a)(1), our Supreme Court has held that

[o]nce the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988) (citation omitted).

Further, this Court has stated that

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

- 13 -

*In re B.,N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

With regard to § 2511(a)(1), Father asserts that he has not evidenced a settled purpose of relinquishing his parental rights, nor has he failed and/or refused to perform his parental duties. Given the trial court's credibility findings, which are supported by the record, we disagree.

The conflicting testimony is set forth in detail above. The trial court found Father's testimony that he had visited with the Children on most weekends since their birth at the end of May 2016 until their placement in foster care in November of 2016, and that he had provided support for the Children lacked any credibility. *See* N.T., Termination Hearing, 1/25/17, at 128-130, 133, 138-139. The trial court found no evidence that Father interacted with the Children as a parent with an obligation to care for them, feed them, change their diapers, or provide for them financially. *See id*., at 134, 138-139. Accordingly, the trial court found that, during the six-month period preceding the filing of the petition, July 17, 2016 through November 17, 2016, Father failed to perform his parental duties. *See* N.T., Termination Hearing, 1/25/17, at 125-126.

The trial court's credibility determinations are supported by competent evidence in the record. The petitioner proved by clear and convincing evidence that the asserted grounds for seeking the termination of parental

rights are valid. We agree with the trial court that termination of Father's parental rights under §2511(a)(1) was warranted.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2017